BENJAMIN B. WAGNER
United States Attorney
BRIAN W. ENOS
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>ISMAEL MARTINEZ,<br><br>            Defendants. | Case No. 1:13-CR-00436 LJO<br><br>**THE UNITED STATES' SENTENCING MEMORANDUM AND FORMAL RESPONSE TO PRESENTENCE INVESTIGATION REPORT**<br><br>Date: December 1, 2014<br>Time: 8:15 a.m.<br>Ctrm: 2<br><br>Hon. Lawrence J. O'Neill |

**I.**

**INTRODUCTION**

On December 19, 2013, the grand jury returned a three-count indictment against defendant Ismael Martinez ("defendant"), charging him with separate counts of: (1) Use of Facility of Interstate Commerce to Induce Minor to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2422(b) (Count One); (2) Travel in Interstate Commerce with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C.§ 2423(b) (Count Two); and (3) Receipt or Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count Three). Doc. 1.

On September 15, 2014, defendant pled guilty in open court to the Interstate Travel count alleged in the indictment (Count Two), following the parties' filing a written plea agreement on August 26, 2014 and drafted pursuant to Fed. R. Crim. Proc. 11(c). Docs. 13 and 15. At the change of plea hearing, the court scheduled the sentencing hearing to take place on December 1, 2014 at 8:15 a.m. Doc. 15.

## II.

## **GUIDELINE CALCULATIONS**

The parties' plea agreement contains an adjusted sentencing offense level of twenty-five (25). Doc. 13, at paras. 3(h) and 4(b). Within paragraphs 3(g) and 4(a), the parties specifically agreed to the application of the following base offense level and enhancements:

| | | |
|---|---|---|
| 24 | Base Offense Level re Interstate Travel (USSG § 2G1.3(a)(4); |
| 2 | Offense Involved Use of Computer (USSG § 2G1.3(b)(3); |
| 2 | Offense Involved Commission of Sex Act (USSG § 2G1.3(b)(4) |
| -3 | Acceptance of Responsibility (USSG § 3E1.1(a)) |
| 25 | Adjusted Offense Level Agreed by the Parties |

Notably, U.S. Probation largely agrees with the parties' Guidelines calculations. In fact, Probation's assessment varies from the parties' agreement in only one respect. Namely, while it likewise requests the court to apply the above enhancements, it also requests application of an additional two-level enhancement (for a total recommended sentencing level of 27), which addresses a defendant's "unduly influenc[ing] a minor to engage in prohibited sexual conduct." PSR, ¶ 29; USSG § 2G1.3(b)(2)(B). The Application Note to this provision states that there is a "rebuttable presumption" that this section applies in a case in which the "participant is at least 10 years older than the minor."

In this case, the defendant is indeed 10 years and 1 month older than the victim.[1] Accordingly, the government does not dispute the logic behind US Probation's applying § 2G1.3(b)(2)(B). That being said, the resolution of this case involved a thorough analysis of the evidence by both parties, as well as multiple rounds of discussions involving the same. In light of this analysis and these discussions, the government stands by the calculations to which the parties agreed in the plea agreement, which does *not* include the "undue influence" enhancement. The government is also mindful of its obligation to specifically perform in advocating for the Court to impose the terms of its plea agreement with defendant. See United States v. Alcala Sanchez, 666 F.3d 571, 575 (9th Cir. 2012) (holding "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said

---

[1] Defendant was born September 1988, and the minor victim was born in October 1998.

to be part of the inducement or consideration, such promise must be fulfilled [and] . . . the government is held to its literal terms").

The government does not, however, dispute the facts set forth within paragraphs 4 through 12 of the PSR. They are egregious, and notwithstanding defendant's extreme immaturity, they plainly reveal his crime, his lack of remorse for his crime, and his continued callous indifference to the well-being of the extremely troubled minor victim. Accordingly, the government believes that defendant should be sentenced at the top of the range applicable to the Sentencing Level 25 reflected in the plea agreement.[2] The government notes that defendant is prohibited from arguing either a departure or variance below this range his applicable range. Doc. 13, ¶3(k).[3]

## III.

### THE GUIDELINES AND § 3553(a) FACTORS SUGGEST THE PARAMETERS OF A <u>REASONABLE SENTENCE</u>

Whereas the Sentencing Guidelines were once "mandatory", they must now be consulted in an "advisory" capacity in that a sentencing court now must also consider factors outlined at 18 U.S.C. § 3553(a). Those factors include:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed

    (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) To afford adequate deterrence to criminal conduct;

    (C) To protect the public from further crimes of the defendant; and

    (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[2] In light of defendant's being classified in Criminal History Category II in the PSR (at p. 3), this range is 63-78 months. As part of its plea negotiations with defense counsel, the government stated in an email dated April 24, 2014 its belief that defendant's range applicable to sentencing level 25 was "57-71 months", but qualified this statement as "assuming Criminal History Level I".

[3] The government further notes that the parties and U.S. Probation also agree that the proper term of defendant's of supervised release after incarceration should be an additional 180 months. Doc. 13, para. 3(i) and PSR, p. 13.

(3) The kinds of sentences available;

(4) The kinds of sentence and the sentencing range established for

    (A) The applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines (I) issued by the Sentencing Commission…

(5) Any pertinent policy statement -

    (A) Issued by the Sentencing Commission . . .

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

Here, consideration of the factors identified within 18 U.S.C. § 3553(a) supports an imprisonment term at the top of the parties' agreed Sentencing Level 25 guideline range, followed by 180 months of supervised release.

To wit, Subsections (3) and (4) provide that a court "shall consider . . . the kinds of sentences available" and "the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant, as set forth in the guidelines."

In addition, Subsection (2) requires the court to consider the need to "reflect the seriousness of the offense", "afford adequate deterrence" and "protect the public." Subsection (1) requires the court to consider defendant's history and characteristics, and the nature and circumstances of the offense. In the case of child exploitation prosecutions, the government has a compelling interest to protect children from those who would exploit them. As justification for the imposition of significant sentences in child exploitation offenses, the Supreme Court has held "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." New York v. Ferber, 458 U.S. 747, 757 (1982). The parties' agreed terms address each of these issues.

Here, it is axiomatic that defendant's repeated victimization of this action's minor victim, through his online grooming and subsequent traveling from Nevada to California to pick her up from her home and engage in sexual relations with her on multiple occasions, is an exceedingly serious offense. The imposition of a top of the guideline range sentence is therefore necessary to protect the public from this conduct, as well as adequately deter others from attempting it.

1 | Furthermore, subsection (6) addresses the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." This makes sense, because imposing a sentence on defendant that is heavier than this court has imposed on those who the government could prove committed similar conduct is unfair to defendant, and a sentence imposed on this defendant that conversely is lighter than others is unfair to previously sentenced defendants. A top of the guideline range sentence both balances the seriousness of defendant's crime, as well as attempts to avoid unwarranted sentencing disparities regarding similarly situated defendants,.

## IV.

## **RESTITUTION**

As noted through the restitution documents attached to the PSR, the parents of this action's victim request that restitution be awarded in the amount of $7,628.26. Of this amount, Probation notes that records were provided demonstrating $6,024.76 in expenses incurred relating to "medical services relating to the psychological care and the necessary transportation expenses for the victim." PSR, ¶ 14. The balance relates to airfare incurred by the parents regarding their May 9, 2013 visit to "Heritage RTC", a "residential treatment center for at risk youths" in Provo, Utah.[4] The victim appears to have been admitted into this facility soon thereafter, or on approximately May 15, 2013.[5]

Probation recommends that restitution be awarded for those expenses incurred relating to the victim, or $6,024.76. In light of the legal principles presented below regarding restitution awards in child exploitation cases, the government endorses the victim's requested restitution award in the full amount of $7,628.26.

Specifically, "the court shall order restitution" pursuant to convictions of crimes including those committed in violation of 18 U.S.C. § 2251(a). 18 U.S.C. § 2259(a). "The order of restitution … shall direct the defendant to pay the victim … the full amount of the victim's losses as determined by the court." 18 U.S.C.§ 2259(b)(1). The issuance of a restitution order under Section 2259 is indeed mandatory. 18 U.S.C.§ 2259(b)(4)(A).

///

---

[4] See http://www.heritagertc.org and United Air Lines Receipt.

[5] See Bill Lane & Associates Receipt.

The term "full amount of the victim's losses" includes any costs incurred by the victim for:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3)(A) through (F).

Federal courts may order restitution to the extent authorized by statute. United States v. Kennedy, 643 F.3d 1251, 1260 (9th Cir. 2011) (citing United States v. Gossi, 608 F.3d 574, 577 (9th Cir. 2010)). Section 2259 is the statutory mechanism that allows for a restitution order regarding this action's victim, and regarding those losses and other harms caused by the offense of conviction. United States v. Paroline, 134 S.Ct. 1710, 1720 (2014). The burden is on the government to establish the existence of a causal connection between the victim's losses and the defendant's conduct in order to meet the requirements of § 2259. Kennedy, 643 F.3d at 1262.

Here, the government agrees with Probation that all of the expenses reported by the victim's family in this case regarding her medical and psychological treatment, and travel attendant thereto, are properly recoverable as restitution pursuant to 8 U.S.C. § 2259(b)(3). The government further maintains, however, that the parents' additional amount in airfare incurred in first visiting the out-of-state treatment facility ($1,574) prior to arranging for the minor victim's admittance likewise qualifies as monies subject to restitution pursuant to Section 2259(b)(3)(C). It provides, in pertinent part, that "necessary transportation" regarding a victim's psychological and medical care also qualifies as expenses subject to restitution awards. The parents' visit to Utah to determine the propriety of the Provo-based treatment facility to help their daughter shortly before her admittance qualifies as "necessary transportation" regarding the same. Accordingly, the government asks that the court order defendant to repay the victim's family the full amount of restitution claimed by the victim's parents in this case, or $7,628.76.

## V.

## CONCLUSION

The government respectfully requests that the Court sentence defendant to a term of incarceration at the top of the Sentencing Level 25 guideline range, a term of supervised release of 180 months, and order defendant to pay restitution in the amount of $7,628.26.

Respectfully submitted,

BENJAMIN B. WAGNER
United States Attorney

Dated: November 19, 2014      By:   /s/ Brian W. Enos
                                    BRIAN W. ENOS
                                    Assistant U.S. Attorney